Clerk, please call the last case. 3-090131 Terry v. Vassilopoulos Mr. Malavides, you may proceed. Thank you. May it please the Court, I'm here on behalf of Appalachian Mary and Harry Vassilopoulos. Initially, this is a case that started out essentially of a boat sale for roughly $27,000 and ended up being a personal judgment against my clients collectively for over $70,000. My brief, I think, sets forth how we get to that position, and in conclusion, I hope to just fill in some of the blanks here. The Court found Mary and Harry Vassilopoulos individually responsible for all the counts that were alleged by the Sengewelds and counter-plaintiff Sanford Lewis. Those included breach of contract, consumer fraud violation, fraud. The Court found those without any evidence of an apparent agency relationship that that testimony would have had come from the purported principal, which in this case would be Harry and or Mary Vassilopoulos. Any testimony that's been elicited by the trial court was only regarding Chris Vassilopoulos and his company and separate entity, Illinois Corporation Central Agents. There's absolutely no evidence that Mary Vassilopoulos and her son Harry Vassilopoulos, who held themselves out at all times as running and or working for Three Rivers Marine Services, were a sole proprietorship or in any way connected with boat sales. The Court excluded crucial evidence of the corporate status of Three Rivers Marine Services Inc. It should be noted that Harry Vassilopoulos was merely an employee of Three Rivers. Mary Vassilopoulos was the sole shareholder and president of the corporation. But essentially, even though Harry was an employee, he got hit with a judgment as an employee based on a purported apparent agency relationship. Again, one that was never clearly established by proponents of the evidence. What was his employment status? Was he a manager, assistant manager? Harry was general groundskeeper, maintenance, administrative. His mother's an elderly woman and it's a small marina and he provides marine services, keeping boats for boaters, gassing the boats, providing mechanical assistance. That testimony came out at trial. At trial also, it's important to note that at no time did Mary or Harry Vassilopoulos ever admit to or acquiesce in any way to any agency relationship with Chris Vassilopoulos. Any testimony came actually contradictory by the Schengelbolts, who at one point testified that they only dealt with Chris. They believed Chris was selling the boat and that at maybe one occasion when Chris wasn't around, Harry showed where the boat was located. The court found an agency relationship based on the fact that that central agent had an office in this Three Rivers Marine office. They shared a fax and that there were no signs indicating that they were not affiliated. In other words, that Three Rivers just had a sign identifying Three Rivers. Testimony at trial was that, in fact, central agent had an internet site, which did not identify a partnership with Three Rivers. This was crucial because Mary and Harry Vassilopoulos, two individuals, are responsible for sizable judgments when in fact they had a valid corporation in good standing when these purported facts took place in 2006. That's important to note because in 2006, the corporate status was, with the Secretary of State, Three Rivers Marine Services Inc. was in good standing. Whatever may have been the case with the plaintiffs, whatever may they have pleaded, that's not the responsibility of Mary and Harry Vassilopoulos. They honestly answered the complaint. The complaint alleged that the corporation was dissolved in 1994, I believe. They answered yes, that's correct. But at no time did the complaint ever allege facts of its current status in 2006, in 2005, in 2007. The case went to trial in 2008. So the court found this agency relationship to bind my clients to acts of someone that's not even really associated with the case, has never been served, no one knows his whereabouts. But my clients now have to bear the brunt of what I believe and we submit as an erroneous judgment. The court at one time in its reasoning and decision also found that the court was denying the introduction of any evidence of good standing of the corporation, which of course would mean that my clients would have corporate status protection, at least Mary as the sole shareholder. But what happened is, in fact, the court seemed to rest upon and hang its hat on a purported Rule 222, 222 discovery violation. That's important to note here also because at no time was there any finding of any discovery violation per se. For the first time I saw in one of counsel's brief the use of the word or the section, the Supreme Court Rule 219. If that's what the court was indicating, that it was a Rule 219 discovery violation, they certainly did not indicate that. There was an objection to the introduction of that evidence by the plaintiff and counter-plaintiff and Rule 222 was raised. There was never any discovery violation entered by the court. There was never any motion to compel brought by either party requesting discovery documents. And there was never any Rule 201K conference by any party regarding purported discovery violations of the production of documents. So the ruling by the court that it was a Rule 222 violation was improper in a lot of ways, including, as I've laid out in my brief, the fact that on its very face and the proof's in the pudding, it's a 70,000 plus judgment. This is a case that's beyond the $50,000 minimal jurisdiction. So for that reason and the ones I just stated, I don't believe that the court utilized Rule 222 properly in denying the introduction of this crucial evidence for my clients. It should also be noted that, and I started by saying a few moments ago, that the counts as alleged by the plaintiffs and counter-plaintiffs allege breach of contract, but it also alleges a fraud and it also alleges consumer fraud violation. At no time did either plaintiffs or the counter-plaintiffs sustain this burden on those counts. Those counts are very specific, what needs to be brought. And at no time was there any credible evidence offered to sustain that burden. Those counts are crucial because the court awarded attorney's fees. And on a strict breach of contract, as the court well knows, you can't ask for attorney's fees. But on an intentional act, an intentional tort, you can and they did and it was awarded. So there's no case here of any fraud by the purported agent, Chris Vesalopoulos, or central agents. In fact, at best, I suppose it would be, and I've referenced this in my brief, that it would be some act of fraud in the future, a promissory act, which is not recognized in our state. And not to leave this out of equal significance is the fact that Sanford Lewis, who's the counter-plaintiff, is not a consumer within the meaning of the statute. We raised and pleaded affirmative defenses in the underlying case. We pleaded five, none of which were ever answered. Appellees argue that the facts weren't pleaded sufficiently and it wouldn't have affected the outcome. Certainly they would because we asserted and alleged that the plaintiff and or counter-plaintiff never made a demand of Mary and Harry Vesalopoulos at any time for payment on the boat. Knowing full well that Harry and Mary Vesalopoulos did not sell them the boat or retain any money for the boat. Knowing full well that they wrote a check for the boat to central agents. We raised the fact that at no time did the Sablewolds and Sanford Lewis, who are seeking the court's intervention in an equitable sense, did they come in with clean hands so that they could ask the court for assistance. In fact, that was contrary to what had taken place throughout these series of events. At no time did, and we allege this is another affirmative defense, that the parties ever, the plaintiff or counter-plaintiff ever mitigated their damages in any way. They did not. They didn't take any steps to mitigate damages. We asserted that the parties never conducted a title search, when in fact there was testimony by Sanford Lewis, counter-plaintiff, that he did. Certainly a title search would have revealed some discrepancies. And lastly, but of equal significance, no privity of contract. And we asserted as an affirmative defense that Mary and Harry never had any contractual relationship with the parties. Oral, written, or otherwise. Absolutely none. Well, the gist of all this is that the affirmative defenses went unanswered. And I moved the court to enter an admission on those matters during the trial, of which was denied. Lastly, I open up with this and I conclude with the point that we're dealing with now, essentially, as I said, about a $27,000 boat sale. Now it's over $70,000. My clients are not in possession of the boat. In fact, there was some reference in one of the briefs that central agent, Sanford Lewis, would have to sign off to central agent to return the boat. We don't have anything to do with central agent. We don't have any power to accept anything on behalf of central agent or sign on behalf of central agent. So essentially, here, a $70,000 plus judgment for a boat of that purchase price. And I've cited in my brief that this is tantamount to a double recovery for the plaintiffs. Thank you. Your client does retain the boat, does he not? Pardon me? Your clients do retain the boat under the trial court's order. Have they? They do under the trial court's order when the lien is paid. Under the trial court's order, they are to receive the boat. Ownership of the boat. Ownership of the boat. They haven't at this point. Because that was pending the payment of the lien. Pending and we just haven't been provided. It's not in the record, but I mean, that's what the order says. There's a trial court order to that effect, yes. In conclusion, I ask this court to reverse the findings made by the trial court and reverse the judgments entered against Harry and Mary Vesalopoulos. Thank you. Thank you. Counsel, Mr. Gerritsen? Yes. You will have eight minutes, I believe. Thank you. Please, the court counsel. My name is Gary Gerritsen. I represent Terry and Regina Singwall. They were the original plaintiffs in this particular case. I wish the facts were quite as easy as Mr. Malavides has made them out to be. This is a case that involves the sale of a boat. My client, Regina Singwall, called Three Rivers Marina. There's an important distinction to be made here. He has confused it also. Three Rivers Marina Services, Inc. was involuntarily terminated as a corporation in 1996. It has never been reinstated. Subsequently, at some particular point while this case was pending, the parties, Vesalopoulos' and Mary's, started a new corporation called Three Rivers Marina, Inc., not Three Rivers Marina Services, Inc. My client, at about the time this boat was purchased, called Three Rivers Marina because she was interested in purchasing a boat. So you're claiming the status was Mary doing business as? And that was the allegation of my client's complaint that Mary and Harry were doing business as. Their answer to that, and the second allegation immediately after was that Three Rivers Marina Services, Inc. had been involuntarily terminated by the Secretary of State. The answer in the response to both of those was admit. So the status of the case that I thought that I had based on the pleadings was I thought that I was suing Harry and Mary Vesalopoulos in their individual capacity because that's what the pleadings showed. Now in this particular case, my client called Three Rivers Marina and the person who answered the phone was Christopher Vesalopoulos,  Christopher answered, on behalf of Three Rivers Marina, told them, answered their questions about services available at the marina and asked them why she was interested. She told them she was interested in buying a boat. And he says, we have a boat. Told her what it was and where it was and how they could come see it. So my client went to the marina. Christopher Vesalopoulos was not there. However, Harry Vesalopoulos was and he was in the office. He agreed and took my client out to see the boat. And while at the boat, without making any distinction between Three Rivers Marina and Christopher Vesalopoulos, told them, here's the boat, I don't do the boat sales, you'll have to talk to Chris. So they subsequently did talk to Chris about the boat sales and Chris was running a business called Central Agent Inc., which he did not disclose to my clients, nor were there any signage at the facility for Central Agent Inc. The only signage existed for Three Rivers Marina. And I suggest that that's very comparable to the cases regarding the parent authority with regard to hospitals and doctors on independent contractor status, that there is an obligation and a duty of the hospital, if they want to avoid the issue of a parent authority, to publish a disclosure to the patients coming in that the physicians are independent contractors and are not employed by the hospital. I've raised that in my brief. And in this particular case, there was nothing, no one ever disclosed to my clients that Christopher Vesalopoulos was not an employee of Three Rivers Marina, nor that his business, Central Agent Inc., was not associated with Three Rivers Marina. Subsequent to that, my clients purchased a boat for $26,700. The boat was owned by Sanford Lewis. Mr. Lewis had some health problems and was in the process of selling the boat. Harry Vesalopoulos was aware of that and had admitted in the trial that he told Christopher Vesalopoulos that and was in the habit of going through with clients of the marina and pointing out boats that were for sale that Chris broke for sale. And that's what he did with regard to Mr. Lewis. He went to Mr. Lewis and he agreed to make the sale for Mr. Lewis. The sale was to my clients. At the time, he presented to my clients a bill of sale for Mr. Lewis to Central Agent Inc. that represented that all liens had been paid with regard to the boat. Acting on that, my clients took Mr. Christopher Vesalopoulos' representation and purchased the boat. They provided him with $26,700. Subsequently, they discovered that the boat's purchase money lien had not been cleared. So they could not obtain good title to the boat. So that was all part of the facts. And I mention this as part of the affirmative defenses because I'm not quite certain how one goes about mitigating damages at all, and the facts were in the record, when what you've done is purchased a boat that doesn't have good title and you don't have the money anymore. On the other side of this transaction, Mr. Sanford Lewis comes in. Mr. Lewis received from the $26,500 transaction $5,000. And at the same time, he received a bill from Three Rivers Marina for the repair work to be done on the boat to make it ready for sale, to which he provided them $4,000. In essence, what I'm trying to get to with regard to this case, Your Honor, is that the facts based on the manifest weight of evidence eminently supported finding that there was an apparent authority by and on behalf of Three Rivers Marina. The bill for the repairs was filled out by both Harry and Mary Vasalopoulos. He, in fact, paid the money to them, and they subsequently refunded to Mr. Lewis. Mr. Lewis ultimately received $1,000 from the sale of the boat. The remaining money disappeared, and my clients received a boat without title. Subsequently in this process, they sought this lawsuit. With regard to the double recovery, I have to say that there is no double recovery here. There are two different plaintiffs, Mr. Sanford Lewis and Mr. and Mrs. Singwall, who have, in fact, proved to the court that there was apparent authority. The apparent authority starts out with Mr. Christopher Vasalopoulos' phone call answer and the information given and Harry and Mary's actions indicating that he was part of the marina and the lack of any indication whatsoever that Christopher Vasalopoulos was an independent agent. They acted in such a way, and I believe the record reflects, that to the general public a reasonable person would believe that Harry, Mary, and Christopher were family members involved in an operation in a business that not only serviced boats, not only provided boat slips, but sold boats, and that the sale was involved with regard to all that and that they all gained mutual benefit from the sales and the services that they were holding out to the public that they provided. And based on that, there is apparent authority. With regard to the affirmative defense, no, we did not ask. There was one additional point to the Rule 222B discovery issue. Sorry. Thank you, sir. Mr. Schmidt, you may respond. Do you have seven minutes in response? Please report, Counsel. Chuck Schmidt. I'm on behalf of Sanford Lewis, who is the seller of the boat in this case. The trial court here properly excluded evidence of the corporate status of Three Rivers Marine Service, Inc. because the defendants admitted in their answer that they were doing business individually as Three Rivers Marina and because they did not disclose those facts in discovery and because they did not even disclose the existence of a purported corporation until mid-trial. In fact, it wasn't brought up at all until after the close of the plaintiff's case when the defendant came into court and announced that he had this new evidence, these articles of incorporation that he wanted to admit. The defendants here were sued by both sets of plaintiffs in their individual capacities. The defendants admitted in their answer that they operate and do business as Three Rivers Marina and the defendants concede those admissions, but they assert that those admissions are beside the point because incorporation under the name of Three Rivers Marine Service, Inc. was incorporated in 2004. Those are not the same entities. It's beside the point that they might have incorporation under the name of Three Rivers Marina, when they're already admitting they do business as Three Rivers Marina. And that alone is sufficient to establish that they operate as business in their individual capacities. Throughout the litigation, from the pleadings through the discovery and into mid-trial, the posture of the case was always that the individuals were the defendants here. The status wasn't raised as an affirmative defense. It wasn't raised in their answer. I would point out that under the Code of Civil Procedure, Section 613, where any affirmative matter is likely to take the parties by surprise, it is supposed to be raised as an affirmative defense. With regard to the Supreme Court Rule 222 issue, the rule is mandatory. It's applicable in all civil actions seeking money damages not in excess of $50,000. The rule is mandatory. It's self-executing. It says that the parties shall make the required disclosure. Under Supreme Court Rule 222G, the sanction that the court may impose is also mandatory. It requires that the court shall exclude from trial any evidence offered by that party that was not timely disclosed, in addition to any other sanction that the court might impose. The parties treated this as a 222 case throughout the litigation. It bore the destination of an LM case, which is applicable in cases seeking less than $50,000. And both sets of plaintiffs sought damages in specific amounts of less than the $50,000 limit. In addition to that, Mr. Lewis served his own Rule 222 disclosure on all parties, and that was done in a timely manner. The defendants don't dispute that they did not disclose this article of incorporation until the end, but they assert that they don't have to do that because the plaintiffs did not attach their affidavit of damages. However, the Rule itself does not create an exception for that set of circumstances. It's a Supreme Court Rule that the parties are bound to comply with in any event. Even if this corporation does exist, that backstanding alone is not sufficient to shield defendants from liability in this case. It's not enough that there's a corporation by this name. If this corporation is going to do business as Three Rivers Marina, they're required to comply with the Business Corporation Act, they're required to submit the certificate of an assumed name to the Secretary of State, and very importantly, they're required to disclose this corporation to their customers. They have to make it known to the people that they're dealing with that they are a corporation. And in this case, apparently the defendants themselves were unaware of it until mid-trial. So here they want to use this corporation that nobody knows about until years later as a shield for liability when they're dealing with Mr. Singwald and Mr. Lewis. I want to move on to the issue of apparent authority. A principal is bound not only by the actual authority that he gives his agent, but also that which he appears to give. It is sufficient to create an apparent agency relationship where the principal acquiesces. We don't need an explicit grant. That would be actual authority, not apparent authority. An agent's authority can be presumed from the silence of the principal when he knowingly allows another to act as his agent. And that's from a case that Elmore v. Bloom cited in my brief. And in this case, the defendants held themselves out, Carrie, Mary, and Chris. They all held themselves out to the general public and to Lewis and to the Singwalds as operators of a full-service marina. They offered docking, servicing, and sales of boats. There was testimony from Harry that the marina sold boats. It wasn't just Chris that sold boats. There are specific facts. Lewis had kept his boat at the marina since 2000 when he bought it. For all appearances, Harry and Mary and Chris held themselves out to the public, their customers, as one entity. And when we create this appearance, we're operating out of the same office. We have one name. The signs on the property don't mention this corporation. They don't mention Central Agent Inc. There's nothing to distinguish the entities, and there is no mention from Harry and Mary that Chris is not authorized to act on behalf of the marina. When we have this situation, they're all operating as apparently a family-run business. It's advertised as a family-run business. It would be incumbent upon Harry and Mary to alert their customers, including Mr. Lewis, that Chris is not authorized to act on behalf of the marina. And that simply wasn't done here. There was no double judgment. Your Honors, if you look in the record, Mr. Lewis was induced to execute a bill of sale as part of this entire transaction. And he did that. Mr. Lewis is out of his boat. He's still liable on the note, which has since been satisfied. But he paid that money out of his pocket. There were two victims here. The note has been satisfied? Yes. By your client? By my client for money from the judgment. Oh. The judgment was effective, and he did satisfy the note. I see. Okay. So the boat – let me clear this up – but the boat, under the trial court's order at least, has transferred to the ownership of the defendants? Well, as part of this transaction, there was a bill of sale to Central Agent. And as part of this judgment, Mr. Lewis was ordered to quit claiming his interest to the defendants upon satisfaction. And he has done that? Yes. Okay. As far as you know. Yes. As far as I know. I think this is outside the record. But, yes. More curiosity than anything. By both the bank and Mr. Lewis. And, yes, it has been satisfied. The boat has been at the marina the entire time. And part of the court's rationale is the marina is in a much better position to deal with its boat, which over the course of several years has started to deteriorate, depreciate. All these damages may be taking place, and the marina is in the business of selling boats and repairing boats. And they're in a much better position than Mr. Lewis, who is. . . But they don't have title still, do they? Central Agent. The bill of sale is by Central Agent. Oh, it was a quit claim by Lewis to Central Agent. So Central Agent is still probably in title. Is that correct? As far as the bill of sale, yes, that's correct. I don't know if there's a certificate of title for a boat. But if there is a certificate of title for the boat. . . Well, it's not titled as such, but there certainly is. I thought that the trial court order said that the boat was to be turned over. . . The title was to be turned over to the defendants. It does. Not Central Agent. When I refer to that, Your Honor, I mean when the boat was initially sold. Chris Fasilopoulos was there sitting in the marina office, and this transaction took place. Mr. Lewis executed a bill of sale to Central Agent 8 and handed it to Chris Fasilopoulos. Immediately thereafter, it was supposed to be sold, and there was another bill of sale executed to the same ones. Now, when the court resolved this issue and entered the judgment, Mr. Lewis was ordered to convey his interest, if any, to the Fasilopoulos. And the reason why it was ordered that way is because it was a bill of sale to Central Agent. To the extent that it may cloud the title, we're not sure, but whatever Mr. Lewis has, he has to give it to the Fasilopoulos' defendants in this case. And they have possession already, and to the extent he needs to execute a title certificate or anything else, he's certainly willing to do that. He's been ordered to do it. And the court order. . . No, I said in the court order itself gives them. . . Yes. Once there's evidence of the paid lien, the court order itself gives them title. Yes, we relinquish any claim to the vault they may have. Okay. Thank you. Okay. Thank you, counsel. Mr. Malavides, you may reply. Thank you. I'll start with that last point because it's a very good point, and it might present a legal quagmire for all of us because of the fact that the bill of sale essentially is written to central states. In contradiction of that is a court order that says the boat, upon execution of judgment, will go to the defendants. I don't know how that will play out. I can't answer that. What were Harry and Mary Vasilopoulos doing at all times? Counsel suggested that they were doing business as. . . Three Rivers, as they've always presented, the signs and the place and the marina. This lawsuit was filed in 2005. That's after the articles of incorporation. . . Not articles of incorporation. The letter of good standing was on file with the Secretary of State. Okay, but did you admit in the pleadings that you were doing business as Three Rivers Marine or Marina? Did we admit? Yeah. We admitted that we were doing business as Three Rivers Marine Inc. Inc. That was dissolved in 1994. There was never any pleadings that said in 2005 or 2004 was Three Rivers Marine Inc. in good standing. None. My clients answered truthfully to the question posed. The point of this whole thing is that. . . Did you seem to not remember that they reincorporated? Well, it was interesting because that came up at trial because they had an accounting service that provided them information. . . Right? About contemporaneous with that time. And that's when I first received the information from my clients. And that's when I tendered it to the court or attempted to. And they didn't have that information. That was through a separate accounting firm of which I contacted to get the information. I tried to submit it, offer it in evidence, and it was refused. I bring up one important point, too. And I tried the case, as counsels did as well. At no time did Chris Vesalopoulos ever answer the phone and say, I'm Three Rivers. That didn't happen. First of all, that's patent hearsay. And I'm certain I would have objected. I don't recall any testimony that Chris ever held himself out as answering the phone on behalf of Three Rivers. What phone did he answer? He had a separate phone. And if it called Central Agents, he'd answer Central Agents. There was never any distinguished testimony as to which phone he answered when that purported call came through initially from the Sangalops. Another important point, did Central Agents – I mean, we're talking about a finding of fact by the trial judge. As a matter of common sense, if there's a marina down there, does Central Agent advertise or anything like that? In other words, if the guy was going to go to the marina and buy a boat, why would he even think of looking up Central Agent in the yellow paper if they're not advertising or something like that? I mean, it seems that the trial judge's finding of fact is pretty reasonable. They called the marina number. Well, he advertised on the Internet, number one, in response to your question. Number two, the testimony of Steve Hitt at trial, an employee of Central Agents, contradicts that very fact. He testified that at all times it was Chris that he worked for. Chris was in the business of selling boats. And he testified at trial, he told Sangalops, don't ask Harry anything about the boats. He's not involved with boats. He doesn't sell boats. He testified it was Chris at Central Agents. And, you know, it's interesting because there was testimony also in this case that at one time a check for the boat by the Sangalops was proffered, and it was written out to Three Rivers. And then Three Rivers said, no, we don't own the boat. We're not in the sale of boats here. You have to make it out to the person you're buying it from, which is Central Agents. They wrote another check. Thank you. At all times also, it was established during trial that Central Agent and not Harry was in the business of selling boats. Harry and Mary of the marina were in the business of servicing boats. Yeah, sure, they had an invoice for servicing of the boats, of this particular boat, but that was merely for servicing, not sales. And there was no evidence that would conclude by a reasonable party that the two were affiliated and they were in a joint effort to sell boats. In essence here, in conclusion, Your Honors, what we have is a terrible injustice to my clients. They're on the hook for over $70,000 plus in judgments, individually. When, in fact, we know that they were protected by the Illinois Corporation Act, and there was a valid corporation in existence at the time. Anybody ever found Chris? No. How far can you get on 24 grand? There's a lot of hearsay as to where he went or, you know, sightings in Africa. No one's ever found him. Thank you, counsel. Thank you, counsel, all three of you. Thank you, Your Honors. The arguments in this matter this afternoon will be taken under advisement.